UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DARNELL BLOUNT,

                    Plaintiffs,

                                            11 CV 124 (BMC)

          -against-

THE CITY OF NEW YORK, CHRISTOPHER
McGUINESS, ROBERT MAYER, and                   **DECLARATION OF COUNSEL**
JOHN/JANE DOES 1 through 4,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

            MICHAEL LUMER, an attorney admitted to practice before this Court, pursuant

to 28 U.S.C. § 1746, hereby declares and affirms under penalty of perjury as follows

            1.       I am counsel to the firm Reibman & Weiner ("R&W"), the attorneys for

the plaintiff Darnell Blount in this action.  I submit this declaration in support of the plaintiff's

motion for legal fees, costs and expenses, pursuant to Fed. R. Civ. P. 54 and in accordance with

the terms of the judgment that was entered in favor of plaintiff against the City of New York, on

June 16, 2011, and the Offer of Judgment made by the defendant City of New York, docketed

with the Court on June 14, 2011.

            2.       As discussed herein, plaintiff is requesting $18,787.50.  This figure is

based on the undersigned having expended more than 43 hours, at an hourly rate of $425.  In

addition, R&W is seeking $470.00 in costs and expenses.  The basis for these figures is set out

below.

### Counsel's Background and Rate

            3.       I attended Brooklyn Law School as a Richardson Merit Scholar,

graduating in May 1995.  I was awarded an Edward Sparer Public Interest Fellowship, and served

as a member of the Brooklyn Law Review, where I was also a Notes and Comments Editor.

4.      I was admitted to practice in the State of New York in May 1996.  In July 1996, I was admitted in the United States District Courts for both the Eastern and Southern District.  I was admitted to the United States Second Circuit Court of Appeals in November 1999.  I have an extensive background in the area of civil rights law, and began my career in the area of criminal defense, primarily in federal matters.

5.       I have appeared as counsel of record in over 150 cases in the Eastern and Southern Districts of New York, as well as in hundreds of matters in state court.  I have briefed and argued many appeals before the Second Circuit Court of Appeals and have also successfully appeared before the New York State Appellate Division.

6.      In short, I have considerable experience in civil litigation generally, and in the area of civil rights in particular.

7.      My current hourly rate is $425, which is fair and reasonable in light of my experience and the prevailing rates in the Eastern District of New York.  As discussed in the accompanying memorandum of law, this rate is within the range of reasonable rates approved by this Court in the context of fee applications.

8.      Significantly, the City of New York has also never disputed my hourly rates in post-settlement negotiations in other matters, nor did they challenge my request for $400 per hour in the case of *Chow v. City of New York, et al.*, 09 CV 1019 (BMC), which this Court found reasonable and appropriate in May 2010.

9.      In the *Chow* case, R&W submitted a fee request based on my hourly rate of $400.  While the request was directed for a payment of fees by the Chows, not the City of New

2

York, the municipality was a party to the action and certainly could have disputed my hourly rate, if they believed it to be unreasonable.  This is particularly notable in light of the many cases that were then active between R&W and the Law Department.  Put differently, the City had to know that the issue of my rates had arisen before and was likely to come up again, and yet offered no dispute.

### The Time Expended Was Reasonable and Necessary

10.    As set forth in my time records, which are annexed hereto as Exhibit 1, I expended at least 43.1 hours on behalf of Darnell Blount in this matter.  I say "at least" because there were many additional internal conferences, as well as telephone calls between myself and defense counsel or Mr. Blount, that were not properly memorialized and therefore are not included in this request.  Similarly, my paralegal expended time attempting to obtain Mr. Blount's medical and criminal records, but did not properly record it.  Accordingly, although I know with certainty that these events occurred, we have not requested payment for her time.

11.    R&W also advanced $470 in recoverable costs and expenses.  These consist of $350 to file the action, and $120 to pay for service of process.  These costs were critical and necessary to the commencement of the litigation.  unavoidable.  Copies of R&W's accounting for Darnell Blount is annexed hereto as Exhibit 2.  Hard copies of the underlying receipt and invoice can be produced if there is any dispute to the authenticity of the charge.

12.    The amount of time spent on this matter through the defendants' service of an Offer of Judgment on June 1, 2011, was reasonable and necessary.

13.    Mr. Blount had been arrested on March 31, 2009, by members of the NYPD.  This arrest immediately followed an incident in which the driver of a car in which Mr.

Blount was a passenger deliberately sought to evade the police, perhaps attempted to strike officers with his vehicle, and then fled the scene.  The car crashed nearby and the driver fled. Mr. Blount, who had been asleep in the vehicle until after the initial with the officers began, was arrested and charged with a series of counts, including the attempted murder of a police officer. Defendant Mayer was the arresting officer.

14.     The plaintiff has alleged that he was then assaulted by various officers at the scene of his arrest, and then taken to Brookdale Hospital.

15.     While at Brookdale, he was involved in an incident with defendant McGuinness.  The plaintiff has alleged that McGuinness denied plaintiff access to the bathroom and refused to call in hospital personnel to supply plaintiff with a bed pan.  This led to words between plaintiff and McGuinness, and the defendant eventually handcuffed plaintiff's free hand to the hospital bed.

16.     Defendant McGuinness then alleged that plaintiff deliberately bit his finger.  Plaintiff was subsequently arrested and charged with assaulting McGuinness. Parenthetically, Mayer was not present at the hospital and McGuinness was not involved in the plaintiff's initial arrest.  However, plaintiff has alleged that McGuinness was well aware that Mr. Blount was accused of trying murder a police officer when he appeared at Brookdale to guard the plaintiff.

17.     The case was presented to a grand jury, which indicted plaintiff for the alleged assault on McGuinness.  All charges against plaintiff relating to the March 31 incident were dismissed.

18.     The case proceeded to trial in August 2010, and plaintiff was acquitted of

4

all charges.  Finally, after more than 16 months, plaintiff was released from custody.

19.     As an initial matter, it was necessary to review the underlying criminal record and conduct some basic research to determine the proper person(s) to hold responsible for Mr. Blount's arrest and prosecution.  Complicating matters was the fact that Mr. Blount had actually been arrested twice, each time by a different officer.  Bail had originally been set based on the first arrest.  At some point it was continued based strictly on the second arrest.  The details were not readily clear and the legal consequences for the contemplated §1983 action required additional research.

20.     Once the action was started, the defendants began producing various materials.  Initially, we received arrest documents, which were then followed by some of the criminal trial transcript and medical records.  Eventually, we received the remaining transcripts, the officer's relevant medical records, both defendants' personnel and disciplinary histories, and other records.  Coupled with the records I had received from plaintiff's criminal defense counsel, there were over 700 pages to review.

21.     Mr. Blount's deposition was scheduled for June 2 and McGuinness was to be deposed on June 7, 2011.  Accordingly, on May 31, I spent a significant amount of time revisiting the file to prepare for these depositions, and on June 1, I met with plaintiff to prepare him for his deposition.

22.     Late in the day on June 1, 2011, I received the Offer of Judgment for $25,001 from the municipal defendant.

23.     Plaintiff then appeared for his deposition on June 2, 2011, and McGuinness was deposed on June 7, 2011.  As it appeared plaintiff would accept the Offer of

Judgment, we adjourned the scheduled deposition of defendant Mayer, and then served our notice of acceptance and filed all the necessary document on ECF on June 14, 2011.  We are not seeking to recover for the time spent at the depositions or the costs incurred, as these events occurred after the day on which the Offer of Judgment was served.

## <u>Conclusion</u>

24.    For the reasons set forth above and in the accompanying memorandum of law, plaintiff's request that his legal fees, costs and expenses, in an amount of $18,787.50, should be granted in its entirety.

Dated:  Brooklyn, New York
         June 30, 2011

Respectfully submitted,


/s/

_____
Michael Lumer (ML-1947)

6